## WESLEY a. BENNETT.

*New York Superior Court; General Term, December*, 1857.

ACTION FOR LIBEL.—SUFFICIENCY OF COMPLAINT.—FRIVOLOUS
DEMURRER.

On demurrer to a complaint for libel containing the averment authorized by
section 164 of the Code that the words complained of were published "con-
cerning the plaintiff," the court is bound to assume that the article referred to
the plaintiff.

Where the words alleged in a complaint for libel are fairly susceptible of a con-
struction which would render them libellous, the complaint will be sustained
upon demurrer, although the words may also be interpreted in a way which
would render them innocent.

On appeal from an order rendering judgment on a demurrer as frivolous, the
order will not be reversed, unless the court are of opinion that the demurrer
was good.

Demurrer to complaint.

This action was brought by Edward B. Wesley against James
Gordon Bennett, editor and proprietor of the New York Herald,
for alleged libels published in that paper.

The complaint stated two causes of action. The facts stated
as the first cause were substantially as follows :—That the plain-
tiff was a broker, of the firm of Wesley & Kowalski, and was
also one of the proprietors of the New York Daily Times, and had
always been and was a good, true, and honest citizen, and al-
ways so reputed prior to the publication of the libels complained
of ;—that his business as banker and broker depended very large-
ly upon his personal credit ;—that in December, 1855, a bank
was established in Maryland under the name of the Valley Bank
of Maryland, which purported to be organized under the laws
of that State and by residents thereof ;—that notes of the bank
were put into circulation, but no sufficient security for their pay-
ment was provided, and in the summer of 1856 the bank stop-
ped payment and became insolvent ;—that it had since been
very generally reputed that the bank was fraudulently organ-
ized, with a view to issue a large circulation without any provis-
ion or security for its payment or redemption. The plaintiff then

alleged that he had no connection with the bank nor any interest therein, either directly or indirectly, nor had he any thing to do with its organization or management, nor, prior to the publication of the libels complained of, was he suspected of it. The complaint also alleged that in 1849 or 1850 the Plainfield Bank was established in Plainfield, New Jersey, and that it failed after issuing a large circulation, and was generally reputed to have been fraudulently founded and managed.

The complaint then stated that the defendant, who was the publisher and proprietor of the New York Herald, maliciously, &c., composed and published the following article of the plaintiff. The article was set out with innuendoes. They, however, are omitted here, except those which were inserted to apply the article to the plaintiff.

" The stock operations of the proprietors of the Daily Times [meaning this plaintiff and his partners in the New York Daily Times aforesaid] to-day were as follows :

*Bought*—100 New York Central R. R., 90¾ cash.
   100 Chicago & Rock Island R. R., 106, buyer 60 days.
 *Sold*—350 Cleveland & Toledo R. R., 74⅝ cash.
   150 Penn. Coal Co., 96⅓ R. W.

" The market does not suit these stockjobbers [meaning among others this plaintiff * * *]. They [meaning this plaintiff and others] cannot realize on any of their stocks without loss, and have to make small purchases to do all in their power to sustain prices. Their capital is locked up in so many outside speculations that their operations in Wall-street must for a time be on rather a limited scale. The profits of the Valley Bank swindle amounted to between two and three hundred thousand dollars, but they were divided among four or five ; the Times proprietors [meaning this plaintiff and his copartners in the New York Daily Times] getting but about one-fourth of the plunder. They [meaning this plaintiff and others] furnished the whole capital, which was small, for one-fourth of the profits. The Valley Bank exploded sooner than was intended. It was the intention of its originators [* * * meaning that this plaintiff was one of them] to get out a circulation of half a million before the collapse. But some of the machinery at work gave way, and brought the concern to a dead lock.

" The old Plainfield Bank was a small affair compared with the Valley Bank. The ultimate fate of the Valley Bank financiers will not differ·from that which has already overtaken the Plainfield Bank managers."

The complaint then alleged that by means of the publication of this libel the plaintiff had been injured to his damage $10,000.

To so much of the complaint as contained this first cause of action defendant demurred, on the ground that it did not state facts sufficient, &c.

The plaintiff moved for judgment on the demurrer as frivolous. This motion was granted at the special term, and the defendant now appealed.

*David Dudley Field*, for appellant.—I. The demurrer raises a material *issue of law*, and will not therefore be held frivolous. (Hull *v.* Smith, 8 *How. Pr. R.*, 150 ; Dairs *v.* Potter, 4 *Ib.*, 155 ; Temple *v.* Murray, 6 *Ib.*, 331 ; Metropolitan Bank *v.* Lord, 1 *Abbotts' Pr. R.*, 185 ; Coswell *v.* Bushnell, 14 *Barb.*, 393 ; McKnight *v.* Hunt, 3 *Duer*, 615.)

II. Probably section 247 does not, as a general rule, apply to a demurrer to a complaint for the reason that it does not state facts sufficient to constitute a cause of action.

III. There is nothing to indicate that the demurrer is taken merely for delay. (Savings Bank *v.* Sloan, 12 *How. Pr. R.*, 544 ; Munn *v.* Barnum, *Ib.*, 563.)

IV. The alleged libel does not impute a charge that the plaintiff was one of the originators of the Valley Bank, or concerned in the swindle. He avers that he was not one of its originators, and so cannot be included in the charges against them, unless the article stated in substance that he was one, which it does not. He does not deny that he furnished the capital, and was to have one-quarter of the profits. Every word of the article might be true, and yet no stain rest on the plaintiff's house : that is the true test. (Cooper *v.* Stone, 24 *Wend.*, 434 ; 2 *Den.*, 293.)

*Lyman Abbott*, for respondent.—I. The demurrer admits every issuable allegation contained in the complaint.

II. The averment that the article complained of was written

of the plaintiff, and the innuendoes applying it specifically to him, are issuable averments (*Code*, § 164).

III. So is the averment that it was written with the intent to cause the plaintiff to be suspected of the frauds and wrongs thereinafter alleged to have been charged against him. (Gibson *v.* Williams, 4 *Wend.*, 320–324; *Starkie on Slander*, 392, and notes *aa* and 1 (marg. page).

IV. The article thus applied and interpreted is clearly libellous.

V. Again, to call a party a stock-jobber would seem to be libellous. (1 *Rev. Stats.*, part 1, ch. 20, tit. 19, art. 2, p. 710; and see Morris *v.* Langdale, 2 *Bos. & P.*, 284.)

VI. If the meaning of the article is ambiguous, we have a right to submit its meaning to a jury, and prove upon a trial the meaning imputed to it by the innuendoes. (Snyder *v.* Andrews, 6 *Barb.*, 43; *Ex parte* Bailey, 2 *Cow.*, 479; Goodrich *v.* Woolcott, 3 *Ib.*, 240; Dexter *v.* Faber, 12 *Johns.*, 239; Dolloway *v.* Turrill, 26 *Wend.*, 383–394; Blaisdell *v.* Raymond, 4 *Abbotts' Pr. R.*, 446; McKinley *v.* Robb, 20 *Johns.*, 351; per Senator Verplanck, Ryckman *v.* Delavan, 25 *Wend.*, 186–201; Fry *v.* Bennett, 1 *Abbotts' Pr. R.*, 289–292.)

VII. The fact that a substantial answer has been interposed to the second cause of action, is no answer to the motion for judgment on the first, the entire demurrer being frivolous (*Code*, § 247, and see § 244, *subd.* 5).

VIII. There is no time limited within which the motion for judgment is to be made. (Darrow *v.* Miller, 3 *C. R.*, 241; and see Currie *v.* Baldwin, 4 *Sand. S. C. R.*, 690.)

By the Court.*—Bosworth, J.—Section 164 of the Code declares that "in an action for libel or slander, it shall not be necessary to state in the complaint any extrinsic facts, for the purpose of showing the application to the plaintiff, of the defamatory matter out of which the cause of action arose; but it shall be sufficient to state generally that the same was spoken or published concerning the plaintiff; and if such allegation be controverted, the plaintiff shall be bound to establish, on trial, that it was so spoken or published."

---

* Present, Bosworth, Hoffman, Slosson, and Woodruff, JJ.

The complaint in this action states that the defamatory matter was published " of this plaintiff." Whether the extrinsic facts alleged, for the purpose of applying to the plaintiff each or either of the matters supposed to be libellous, are of themselves alone sufficient, it is unnecessary to decide. It is competent for the plaintiff to prove that they were published of and concerning himself; and upon a demurrer to the complaint, it must be assumed that he can do so.

Each of the libellous imputations contained in the published article must, therefore, *upon a demurrer to the complaint*, be deemed to have been published of the plaintiff, because the complaint so avers. That mode of pleading is allowed by the Code. The allegation is material and sufficient, and its truth is admitted by the demurrer.

The article commences with an account of the stock operations of the proprietors of the Daily Times, of whom the plaintiff is alleged in the complaint to be one. From that, and its comments upon it, the article passes to "The Valley Bank swindle," the profits of which are stated to be between $200,000 and $300,000. The article states that the Times proprietors got but about one-fourth " of the plunder." They furnished the whole capital, which was small, for *one-fourth of the profits.* "The Valley Bank exploded sooner than was intended." "It was the intention of its originators to get out a circulation of half a million before the collapse, but some of the machinery at work gave way, and brought the concern suddenly to a dead lock."

It may be conceded that nothing contained in this article is absolutely inconsistent with the idea, that neither of the proprietors of the Daily Times was concerned in originating the Valley Bank, or in its management, or was a party to any plan or intent to defraud the public.

At the same time, we are not prepared to say that it may not be fairly held to mean that the proprietors of the Times were to furnish the whole capital, which was to be small and inadequate; and that they, before the bank was put in operation, agreed to do this, expecting and intending, in common with those having its immediate management, that a half million of dollars of its notes should be issued, which were not to be redeemed; and that they should receive one-fourth of the whole sum of which the public might be plundered, for fur-

nishing capital enough to effect such a purpose, and by such means.

We think, therefore, that the demurrer was rightfully overruled. Whether it was frivolous or not, is not the question to be decided on an appeal from the order. (Laverty *v.* Griswold, 12 *N. Y. Leg. Obs.*, 316.)

If correctly decided on the merits, it should not be reversed merely because the court may think it was not frivolous.

The order appealed from must be affirmed, with $10 costs.